BLANK ROME LLP
A Pennsylvania LLP
STEPHEN M. ORLOFSKY
*orlofsky@blankrome.com*
DAVID A. DOREY
*dorey@blankrome.com*
New Jersey Resident Partners
KIT APPLEGATE
*applegate@blankrome.com*
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey  08002
(856) 779-3600

Attorneys for Defendant
Hollywood Tanning Systems, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HADIS NAFAR, on behalf of<br>herself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | |
| | : | |
| HOLLYWOOD TANNING<br>SYSTEMS INC., | : | **NOTICE OF REMOVAL** |
| | : | |
| Defendant. | : | |

PLEASE TAKE NOTICE that Defendant Hollywood Tanning Systems Inc., by and

through its undersigned counsel, hereby removes this action from the Superior Court of New

Jersey, Law Division, Middlesex County, to the United States District Court for the District of

New Jersey pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 on the following grounds:

## PARTIES

1.     Plaintiff Hadis Nafar is an individual who, the Class Action Complaint alleges, is a citizen of the State of New Jersey.

2.     Defendant Hollywood Tanning Systems Inc. is a corporation organized under the laws of the State of New Jersey and has its principal place of business at 11 Enterprise Court, Sewell, New Jersey 08080.

## STATUS OF PROCEEDINGS

3.     On or about June 21, 2006, Plaintiff Hadis Nafar, on behalf of herself and all other similarly situated, filed a Class Action Complaint against Defendant Hollywood Tanning Systems Inc. in the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4879-06.  The Class Action Complaint is brought "on behalf of a nationwide class of citizens and residents who have purchased indoor tanning services from" Defendant Hollywood Tanning Systems Inc.  It seeks trebled compensatory damages, including but not limited to, a refund of the fees the putative class members paid for Defendant Hollywood Tanning Systems Inc.'s services, injunctive relief, punitive damages, attorneys' fees, and costs of suit.

4.     The Class Action Complaint was formally served upon Defendant Hollywood Tanning Systems Inc. on July 17, 2006.

5.     All state-court papers served on Defendant Hollywood Tanning Systems Inc. at the time of removal are attached and include:

(a)     the Class Action Complaint (Exhibit A).

## BASIS FOR ORIGINAL JURISDICTION

6.     This Notice of Removal is timely under 28 U.S.C. § 1446(b).  It is filed within 30 days of service of the Class Action Complaint upon Defendant Hollywood Tanning Systems Inc.

2

7.     This case satisfies the federal court's diversity jurisdiction under 28 U.S.C. §1332 because the parties are diverse within the meaning of § 1332(d)(2)(A).  As this Class Action Complaint is purportedly brought on behalf of a "nationwide class of citizens," at least one member of the class is a citizen of a state different from Defendant Hollywood Tanning Systems Inc.  Although the amount in controversy is not pleaded in the Class Action Complaint, the amount in controversy is in excess of $5,000,000, exclusive of interest and costs, as it seeks "on behalf of a nationwide class of citizens," trebled compensatory damages, including but not limited to, a refund of the fees paid for Defendant Hollywood Tanning Systems Inc.'s services, punitive damages, and attorneys' fees.

8.     Therefore, this is an action over which this Court would have had original jurisdiction had it been filed initially in this Court, and removal to this Court is proper under 28 U.S.C. §§ 1441(a) and 1453.

WHEREFORE, notice is given that this action is removed from the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey.

Dated: August 14, 2006

STEPHEN M. ORLOFSKY
DAVID A. DOREY
New Jersey Resident Partners
KIT APPLEGATE
BLANK ROME LLP
A Pennsylvania LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
(856) 779-3600

Attorneys for Defendant
Hollywood Tanning Systems, Inc.

3

# EXHIBIT A

David J. Meiselman
Jeffrey I. Carton
Lindsay M. Held
Barry B. Cepelewicz
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF NEW JERSEY
LAW DIVISION
COUNTY OF MIDDLESEX
————————————————————————————x

HADIS NAFAR,
on behalf of herself and all
others similarly situated,

**CLASS ACTION COMPLAINT**

               Plaintiff,

Index No.

       -against-

**Jury Trial Demanded**

HOLLYWOOD TANNING SYSTEMS INC.,

             Defendant.
————————————————————————————x

Plaintiff, Hadis Nafar, by her attorneys, Meiselman, Denlea, Packman, Carton & Eberz, P.C., as and for her complaint, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

### Nature of this Case

1.　　This action seeks redress for the fraudulent, deceptive, and otherwise improper business practices that Defendant is engaging in with respect to Defendant's indoor tanning services.  Defendant is the owner of the "Hollywood Tans" brand and operates, through a network of franchised stores, the largest chain of tanning "salons" in the United States, where customers can expose themselves to ultraviolet light in a

misguided attempt to get a "safe" tan.

2.      On the Hollywood Tans' website, Defendant promotes the "benefits of tanning," which, in an appeal to customers' vanity, includes, according to Defendant, the contention that customers "will look terrific" and that exposure to Hollywood Tans' ultraviolet rays will help clear acne.  In addition, Defendant, despite Federal Trade Commission regulations prohibiting health-related claims in connection with the marketing of indoor tanning equipment, further claims benefits with respect to: psoriasis; body weight; stress; and seasonal affective disorder.

3.      Unfortunately for customers, such as Plaintiff, Defendant not only exaggerates and distorts the "benefits" of indoor tanning but also deceptively fails to provide adequate warnings, notices or any relevant, material information concerning their ultraviolet (UV) services, and specifically – and most dangerously – fails to warn customers about the risks of cancer, including basal cell carcinoma and squamous cell carcinoma.

4.      The United States Department of Health and Human Services has labeled UV radiation from the sun and artificial sources, such as indoor tanning machines, as a known carcinogen. Similarly, the American Medical Association and dozens of professional medical groups, including the American Academy of Dermatology, Skin Cancer Foundation and American Cancer Society, have declared unambiguously that indoor tanning is not safe and dramatically increases the risk and occurrence of skin cancer. Similarly, in opposition to Defendant and the indoor suntanning industry's bogus claims, these respected medical groups have stated unambiguously that there is no such thing as a "safe tan" and that indoor tanning, which has mushroomed to a $5

2

billion-a-year industry, is significantly contributing to the skin cancer epidemic. While more and more (but not enough) people generally understand the dangers of sun exposure, Defendant and the rest of the indoor tanning industry, have attempted -- and, in part, have succeeded -- in marketing indoor tanning to unsuspecting customers as a safe, healthy alternative.

5.      All the while, as one person dies every hour from skin cancer.

6.      This suit is brought, pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("Consumer Fraud Act") and the common law of this State, on behalf of a nationwide class of citizens and residents who have purchased indoor tanning services from Defendant. It seeks, inter alia, trebled compensatory damages, including, but not limited to, a refund of the fees paid for Defendant's services, injunctive relief, punitive damages, attorneys' fees and the costs of this suit.

Jurisdiction and Venue

7.      This Court has jurisdiction over this action pursuant to Consumer Fraud Act, N.J.S.A. 56: 8-1 et seq. and the common law. Defendant's principal place of business is located in the State of New Jersey, and Defendant does additional actual business throughout the State of New Jersey, including the sale of its services and equipment to branded stores in New Jersey; receipt of franchise fees paid by franchisee stores in New Jersey and other monies received in the State of New Jersey; and advertising and marketing in the State, as well as maintenance of an interactive website accessible to consumers in and residents of the State, through which the benefits of indoor tanning and the Hollywood Tans salons are touted.

3

+914 517 5055                    T-166   P.006/025   F-913

Jun-22-06    04:24pm    From-MDPCE PC

8.      Venue is proper in this District pursuant to N.J. Ct. R. 4:3-2 because

Plaintiff, Hadis Nafar, resides in Middlesex County and has been a customer of one of

Defendant's stores in Middlesex County, and because Defendant actually does

business in Middlesex County.

9.      Federal court subject matter jurisdiction over this action does not exist, as

no federal question is raised and complete diversity of citizenship between Plaintiff and

Defendant is lacking.

Parties

<u>Plaintiff</u>

10.     Plaintiff, Hadis Nafar, is a citizen and resident of the State of New Jersey,

County of Middlesex.  Ms. Nafar purchased indoor tanning sessions at a Hollywood

Tans salon located in Middlesex County.  She paid for monthly memberships that

permitted her to conduct indoor tanning sessions, for which she paid a monthly fee on

her credit card.  Each month, she was charged an additional monthly fee on her credit

card.  Her first monthly membership fee was charged on or about April 2005, and

Plaintiff continued to purchase monthly memberships until March 2006.  Prior to

purchasing her monthly membership, Ms. Nafar was not provided with any information

or warnings concerning cancer or other health risks associated with indoor tanning and

Defendant's ultraviolet services.  Similarly, she did not receive any warnings or notices

prior to conducting any indoor tanning session, nor was she asked to sign any consents

or waivers relating to potential dangers.

4

<u>Defendant</u>

11.     Defendant Hollywood Tanning Systems Inc. ("Hollywood Tan") is a corporation established under the laws of the State of New Jersey, with its principal place of business located at CSC Plaza, Suite 400, 1120 Route 73 South, Mount Laurel, New Jersey 08054.

<u>Operative Facts</u>

12.     As the largest indoor tanning company in the United States, Defendant operates, through a network of "Hollywood Tans" franchised stores, over 300 indoor tanning facilities across the nation.

13.     The indoor tanning industry has swelled in recent years to become a $5 billion-a-year business. This industry has taken an aggressive stance in fighting government regulation, such as the Federal Trade Commission's prohibition against making health claims in connection with the marketing and sale of indoor tanning equipment and the attempts by many states to impose parental consent requirements for indoor tanning salons. Indeed, the industry has gone so far as to claim that indoor tanning is not only harmless but also safe.

14.     For example, one of the myths that the indoor tanning industry relies on, and promotes, is that a "tan" is much better than a "burn." In fact, according to an abundance of incontrovertible medical evidence, both are triggered by UVA and UVB, two forms of ultraviolet light emitted by sunlight and indoor tanning equipment, and, indeed, research has found that both UVA and UVB destroy the DNA in cells, a precursor to cancer.

5

15.     In stark opposition to the multi-billion dollar indoor tanning lobby, respected scholars and medical authorities, including the Skin Cancer Foundation; American Academy of Dermatology Association; American Cancer Society; Centers for Disease Control; the World Health Organization; and dozens upon dozens of other respected medical groups, have lambasted any notion of a "safe tan." In fact, in 1994, the American Medical Association called for the banning of the sale and use of tanning equipment for non-medical use.  The United States Department of Health and Human Services has labeled UV radiation from artificial sources, such as indoor tanning machines, as a known carcinogen.

16.     In the industry's infancy during the 1970s, medical devices that emitted principally UVA were developed and quickly adopted by indoor tanning companies. According to the Skin Cancer Foundation, the biological effects of UVA were less obvious than those of UVB, which is responsible for skin reddening. Accordingly, at that time, those machines were touted as offering a "safe tan"; however, the industry and medical experts soon learned that UVA exposure carried the same health risks and problems as UVB, namely skin damage and skin cancer.  These UVA machines were also not very effective in producing a tan.

17.     Accordingly, reminiscent of the tobacco industry's deceptive and quixotic attempt to produce and market a "safe cigarette," the so-called "safe tan" touted by the industry's lobbyists and marketers, did not materialize.  Yet, incredibly, the industry did not abandon these UVA machines out of scientific concerns, as clearly demonstrated by medical authorities, but rather because they did not produce a darker and faster tan

6

than natural UVA could produce.

18.    The next step in the industry's deception was the development of equipment that emits a mixture of UVA and UVB, simulating the mixture of ultraviolet light found in the sun. This type of equipment is among that currently used in the industry and by Defendant.

19.    The insidious nature of indoor tanning is that despite the fact that many of the 28 million indoor tanning customers understand that there are significant, incontrovertible and down-right scary evidence that ultraviolet exposure via sunlight causes skin cancers, they also believe that indoor tanning is different, less risky and actually safe.  Unfortunately, only one of those beliefs is correct – indoor tanning is indeed different – indoor tanning lamps emit ultraviolet radiation at levels higher than the sun, with new, high-pressure sunlamps emitting doses of UVA that can be as much as 15 times that of the sun.  The industry and Defendant tout the use of these UVA high-pressure machines, such as Defendant's HT High Pressure System, which Defendant states on its website "block[s] out most of the UVB rays allowing your skin to maintain natural exfoliation [which] helps high pressure tanners to stay tan longer."  However, what Defendant does not state is that the UVA emitted by its HT High Pressure System is linked to skin cancer. Similarly, Defendant fails to warn customers that there is no such thing as a safe tan because both UVA and UVB are dangerous and pose clear health hazards.

20.    Unfortunately, this perception of safe indoor tanning, perpetuated and promoted by Defendant and other members of the indoor tanning lobby, could not be

7

further from the truth.  For example, a Dartmouth Medical School research study,

published in the <u>Journal of the National Cancer Institute</u> in 2002, showed that indoor

tanning use increased a person's odds of developing squamous-cell carcinoma 250

percent and boosted the risk of basal-cell carcinoma 150 percent   The studies and the

credible evidence, which Plaintiff will present at trial, is overwhelming and will dispute

the myths, deceptions and fraud perpetrated by Defendant and the indoor tanning

lobby.

     21.    What is clear is that: (i) ultraviolet light directly damages DNA leading to

mutations; (ii) ultraviolet light produces activated oxygen molecules that in turn damage

DNA and other cellular structures; and (iii) ultraviolet light leads to a localized

immunosuppression, thus blocking the body's natural anti-cancer defenses.

     22.    Furthermore – and extremely disturbing – is the recent research that

shows a direct link between immunosuppression, which results from indoor tanning,

and leukemia and lymphoma.

     23.    Thus, indoor or outdoor – there is no such thing as a "safe tan."

Defendant does not warn its customers of this fact; markets itself as a safe alternative;

appeals to its customers' vanity, without disclosing any risks; and perpetuates and

promotes dangerous, life-threatening myths.

     24.    For example, on its website, Defendant promotes the "benefits of

tanning," which, in an appeal to customers' vanity, includes, according to Defendant,

the contention that customers "will look terrific" and that exposure to Hollywood Tans'

ultraviolet rays will help clear acne.  In addition, Defendant, despite Federal Trade

8

Commission regulations prohibiting health-related claims in connection with the marketing of indoor tanning equipment, further claims benefits with respect to: psoriasis; body weight; stress; and seasonal affective disorder. And in a perverted twist, rather than preaching the necessity and benefits of <u>sun-block</u> lotion, Defendant actively markets its Hollywood Tans' branded "HT Lotions" that Defendant claims will cause a customer's skin to receive maximum "hydration" and to "react by becoming healthier," allowing a customer to "tan more efficiently."

25.     Defendant's deceptive claims and fraudulent practices are part and parcel of the indoor tanning lobby's equally unscrupulous and deceitful public relations and marketing campaign, which is full of dangerous falsehoods and half-truths. For example, in a recent newspaper article, the executive director of the Indoor Tanning Association claimed: "More and more is being learned about the fact [that] the only way you can get Vitamin D is by light striking your skin." This incredible falsehood is shocking, but typical, of the misinformation campaign perpetrated by the indoor tanning lobby and uniformly lambasted by the medical community.

26.     In truth, Vitamin D can be obtained through ultraviolet light, dietary supplements or food – the latter of the two are harmless ways to get Vitamin D. In fact, the American Academy of Dermatology Association expressly stated in May 2005 that increased exposure to ultraviolet light should not be used to boost Vitamin D intake and recommended that in cases of individuals deficient in Vitamin D, such as older adults, vitamin supplements or enriched food should be used. Yet, the indoor tanning lobby perverts that message to claim that ultraviolet light is a necessary and safe way to get

9

Vitamin D.

27.   Defendant and the indoor tanning lobby well understand — just as the tobacco industry knew — the most gullible target demographic is the youth market, especially young women under the age of 21  In fact, the fastest growing customer segment consists of teen girls.  Little wonder that the industry has been targeting advertising to minors; for example, a recent study indicated that nearly half of the high school newspapers in the Denver, Colorado area had indoor tanning advertising.

28.   Moreover, as part and parcel of its deceptive scheme and practices, Defendant goes so far as to "train" its franchisees and employees to emphasize and highlight to customers that Defendant's indoor tanning machines are safe because they use "special filters" that allow for a healthy and safe tan.  Unfortunately, nothing could be further from the truth — what customers are not being told is that these "filters" are as ineffective and dangerous as the filters that cigarette manufacturers promoted for decades as a safe alternative.  In truth, all of Defendant's machines emit UVA and UVB, and Defendant fails to warn customers that both UVA and UVB are dangerous and that use of Defendant's machines greatly increase the risk of skin cancer.

29.   Furthermore, as disclosed in an alarming new study supported by the National Institutes of Health and published in the April 2006 issue of the Journal of the American Academy of Dermatology, the similarity between indoor tanning and tobacco use does not end there.  The research indicated that ultraviolet light emitted by indoor tanning machines produce endorphin, the brain chemical that is linked to pain relief and euphoric feelings.  The study showed that indoor tanners actually undergo physical

10

withdrawal, just as they would in connection with any addictive chemical, such as nicotine

30.    Accordingly, the good news for the indoor tanning lobby is that once tanning salons have lured customers, especially young tanners, into believing the industry's deceptive advertising and marketing, these customers may not only become "addicted" to the short-term presumed beauty benefits extolled by Defendant but also become physically addicted too.

31.    While Defendant racks up millions upon millions of dollars in profits – and highlights its fashionable skin moisturizing products for sale at its salons rather than disclosing cancer risks -- one person dies every hour from skin cancer.

32.    Neither the medical and healthcare communities, nor most average citizens, can envision a world where warning labels and restrictions do not exist with respect to the sale of cigarettes; yet, today, we live in a world where Defendant is permitted to market and sell its ultraviolet services, which pose a significant cancer risk, with almost no restrictions.  Consequently, the American Academy of Dermatology and Plaintiff support the following requirements for indoor tanning facilities, including:

    (i)    A warning statement defining potential hazards and consequences of exposure to UVA should be signed by each patron;

    (ii)    Minors must obtain parental or guardian consent to use indoor tanning facilities; and

    (iii)    No person or facility may advertise the use of any UVA or UVB tanning device using wording, such as "safe," "safe tanning," "no harmful rays,"

"no adverse effect," or similar wording or concepts.

<u>Class Action Allegations</u>

33.    Plaintiff brings this action on her own behalf and additionally, pursuant to pursuant to N.J Ct. R. 4:32, on behalf of a nationwide class (the "Class") of all citizens and residents who have purchased indoor tanning services at Defendant's tanning salons.  Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

34.    Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of the Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

35.    This action is brought as a class action for the following reasons:

a.    The Class consists of tens of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

b.    There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.    whether Defendant's marketing, offering and sales practices and its rendering of its indoor tanning services purchased by Class members is fraudulent, deceptive, misleading and improper;

ii.    whether Defendant's actions constitute violations of the New Jersey Consumer Fraud Act;

iii.    whether Defendant is defrauding the general public through

12

its actions;

        iv.     whether Defendant is being unjustly enriched at the expense of consumers in connection with the sale of its indoor tanning services;

        v.     whether Defendant has breached its warranties made to customers in connection with the sale of indoor tanning services;

        vii.     whether members of the Class have sustained damages and, if so, the proper measure thereof; and

        vii.     whether Defendant should be enjoined from its continued marketing, advertising and other business practices with respect to the sale and rendering of indoor tanning services.

        c.     The claims asserted by Plaintiff are typical of the claims of the members of the Class.

        d.     Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including related litigation involving consumer fraud.

        e.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

        i.     Absent a class action, Class members, as a practical matter, will be unable to obtain redress; Defendant's violations of its legal obligations will continue without remedy; additional consumers and purchasers will be harmed; and Defendant will continue to retain their ill-gotten gains;

        ii.     It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

    iii.    When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

    iv.    A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort and expense and ensure uniformity of decisions; and

    v.    The lawsuit presents no difficulties that would impede its management by the Court as a class action.

    f.    Defendant has acted on grounds generally applicable to the Class members, making class-wide monetary and injunctive relief appropriate.

    g.    The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendant and of inconsistent or varying adjudications for all parties.

36.    Defendant's violations of the New Jersey Consumer Fraud Act are applicable to all members of the Class, including those residing outside New Jersey, and Plaintiff is entitled to have Defendant enjoined from engaging in deceptive and unconscionable conduct in the future.

## FIRST CAUSE OF ACTION

(Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56: 8 -1 et seq.)

37.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

38.    The Consumer Fraud Act prohibits, inter alia:

The act, use or employment by any person of any unconscionable

14

commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise. . . ..

N.J.S.A 56:8-2.

39.    Defendant, in its capacity as marketer, advertiser, promoter, distributor and seller of its indoor tanning services and equipment (collectively, "Indoor Tanning Services"), is a "person" as defined in the Consumer Fraud Act. N.J.S.A. § 56:8-1(d).

40    Defendant's Indoor Tanning Services constitutes "merchandise" within the meaning of Consumer Fraud Act 56:8-1(c).

41.    Defendant's misrepresentations and false, deceptive and misleading statements with respect to Indoor Tanning Services, as described above, constitute affirmative misrepresentations and concealment and omissions of material fact in connection with the marketing, advertising, promotion, distribution and sale of Indoor Tanning Services, in violation of the Consumer Fraud Act.

42.    Defendant's false, deceptive and misleading statements would have been material to any potential consumer's decision to purchase or use Indoor Tanning Services. Similarly, the information about Indoor Tanning Services that Defendant concealed from the public would have been material to any potential consumer's decision to buy or use Indoor Tanning Services.

43.    Moreover, Defendant made such false, deceptive and misleading statements, and concealed material information, about Indoor Tanning Services with the intent that others rely upon such statements and not become aware of the concealed information.

15

Jun-22-06   04:27pm   From-MDPCE PC

44.    Plaintiff and the other members of the Class purchased and used Indoor Tanning Services for personal use and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud Act

45.    As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable loss of monies, including, but not necessarily limited to, the purchase price of the Indoor Tanning Services that they purchased, the amount of such loss to be determined at trial.

46.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for trebled compensatory damages -- including, but not limited to, payment of a sum equal to treble the amount of a refund of all monies acquired by reason of Defendant's marketing, advertising, promotion, distribution or sale of Indoor Tanning Services -- plus reasonable attorneys' fees, filing fees and reasonable costs of suit. N.J.S.A. 56:8-2.11, 8-2.12, 8-19.

47.    Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety and well-being of Plaintiff and the other members of the Class. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Fraud)

48.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 47 above as if fully set forth herein.

16

49.    Defendant is misrepresenting the safety of its Indoor Tanning Services and its tanning machines, including Defendant's HT60, HT54, HT 42, HT 4400 and High Pressure system machines.   For Instance, in addition to failing to warn of known dangers, including substantial cancer risks, Defendant additionally implicitly and explicitly misrepresents its Indoor Tanning Services as beneficial to customer's health and well-being.

50.    Defendant knew that its misrepresentations and omissions of material fact about the safety of indoor tanning and its Indoor Tanning Services were false and misleading at the time that Defendant made them and intended that purchasers and users of its Indoor Tanning Services rely upon such false and misleading representations.

51.    Plaintiff and the other members of the Class relied, reasonably, justifiably, and in good faith, on Defendant's misrepresentations and omissions of material facts, including cancer risks, relating to Defendant's Indoor Tanning Services and machines in deciding to purchase and use such Indoor Tanning Services and machines.  Had they known of the falsity of such misrepresentations and the true facts about indoor tanning and Defendant's Indoor Tanning Services and machines that Defendant concealed, they would not have purchased or used Defendant's tanning services.

52.    As a consequence of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages incurred as a result of Defendant's actions, including, but not necessarily limited to, the purchase price of the Indoor Tanning Services that they purchased, the amount of such damages to be determined at trial.

17

53.   Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety and well-being of Plaintiff and the other members of the Class. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

54.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 53 above as if fully set forth herein.

55.   By engaging in the conduct described above, Defendant has unjustly enriched itself at the expense of Plaintiff and the other members of the Class and is required, in equity and good conscience, to compensate them fully for the damages that they have suffered as a result of Defendant's actions.

56.   By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Warranty)

57.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 56 above as if fully set forth herein.

58.   Defendant breached express and implied warranties in connection with the advertising for its Indoor Tanning Services and its tanning machines relating to their safety by, among other things, emphasizing the dubious claims of "tanning benefits" –

18

including the claims that Defendant's Indoor Tanning Services will lead to:  body weight reduction; psoriasis control; stress reduction; clearing acne; and improved physical beauty – all while failing to warn, or even provide any perfunctory notice to, customers regarding the substantial risks of ultraviolet exposure resulting from Defendant's Indoor Tanning Services and the link to skin cancer and the fact that there is no such thing as a "safe tan."

59.     Defendant made such express and implied warranties while knowing the purpose for which its indoor tanning services and machines were to be used and advocating its use for such purpose.

60.     Defendant made such express and implied warranties as part of their marketing campaign and in advertisements in all forms of media, including on its website.

61.     Defendant's Indoor Tanning Services and machines do not conform to the express and implied warranties made by Defendant and do not conform to Defendant's promises, descriptions or affirmations of fact.  Defendant's Indoor Tanning Services and machines therefore were not adequately labeled, sold, promoted or fit for the ordinary purposes for which they were used.

62.     Plaintiff and the other members of the Class purchased Defendant's Indoor Tanning Services based upon and in reliance upon such false warranties.

63.     As a consequence of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages incurred as a result of Defendant's actions, including, but not necessarily limited to, the purchase price of the Indoor Tanning Services that they purchased, the amount of such damages to be determined

Jun-22-06   04:27pm   From-MDPCE PC                              +914 517 5055        T-186   P.022/025   F-913

at trial.

64.    Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety and well-being of Plaintiff and the other members of the Class.  Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Injunctive Relief)

65.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 64 above as if fully set forth herein.

66.    Given Defendant's wrongful actions as set forth above, which are ongoing and continuing to deceive and harm purchasers and users of Defendant's Indoor Tanning Services and machines and the general public, the Court should:

(a)    preliminarily and permanently enjoin Defendant from continuing to market, advertise, promote or sell its Indoor Tanning Services through use of its current representations concerning the safety of, or health or well-being benefits associated with, indoor tanning;

(b)    preliminarily and permanently enjoin Defendant from continuing to market, advertise, promote or sell its Indoor Tanning Services without proper and adequate warnings concerning the health risks, including skin cancer risks, of indoor tanning and using Defendant's Indoor Tanning Services and machines;

(c)    preliminarily and permanently enjoin Defendant from continuing to market, advertise, promote or sell its Indoor Tanning Services without requiring each customer

20

to sign a written waiver and consent that express states that the customer has been informed of the substantial health risks, including skin cancer risks, of indoor tanning and using Defendant's Indoor Tanning Services and machines; and

     (d)    preliminarily and permanently enjoin Defendant from continuing to market, advertise, promote or sell its Indoor Tanning Services to minors without requiring written parental consent on a consent and waiver form that provides proper and adequate notice to parents of the substantial health risks, including skin cancer risks, of indoor tanning and using Defendant's Indoor Tanning Services and machines.

     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant, as follows:

     1.    Certifying this action as a class action, with a Plaintiff class as defined above;

     2.    On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages in an amount to be determined at trial, plus attorneys' fees;

     3.    On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus punitive damages in an amount to be determined at trial;

     4.    On Plaintiff's Third Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

21

5.    On Plaintiff's Fourth Cause of Action, awarding against Defendant the

damages that Plaintiff and the other members of the Class have suffered as a result of

Defendant's actions, the amount of such damages to be determined at trial, plus

punitive damages in an amount to be determined at trial;

6.    On Plaintiff's Fifth Cause of Action, (a) declaring that Defendant's

advertising of its Indoor Tanning Services is misleading; (b) preliminarily and

permanently enjoining Defendant from continuing to market, advertise, promote or sell

its Indoor Tanning Services through use of its current representations concerning the

safety of, or the health or well-being benefits associated with, indoor tanning; (c)

preliminarily and permanently enjoining Defendant from continuing to market, advertise,

promote or sell its Indoor Tanning Services without proper and adequate warnings

concerning the health risks, including skin cancer risks, of indoor tanning and using

Defendant's Indoor Tanning Services and machines; (d) preliminarily and permanently

enjoin Defendant from continuing to market, advertise, promote or sell its Indoor

Tanning Services without requiring each customer to sign a written waiver and consent

that express states that the customer has been informed of the substantial health risks,

including skin cancer risks, of indoor tanning and using Defendant's Indoor Tanning

Services and machines; and (e) preliminarily and permanently enjoin Defendant from

continuing to market, advertise, promote or sell its Indoor Tanning Services to minors

without requiring written parental consent on a consent and waiver form that provides

proper and adequate notice to parents of the substantial health risks, including skin

cancer risks, of indoor tanning and using Defendant's Indoor Tanning Services and

machines

22

7.     Awarding Plaintiff interest, costs, and attorneys' fees; and

8.     Awarding Plaintiff such other and further relief as this Court deems just

and proper.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims in this action.

## Designation of Trial Counsel

Pursuant to Rule 4:25-4, the Court is advised that, subject to his admission pro

hac vice, Jeffrey I. Carton, Esq. is hereby designated as trial counsel.

## Certification of Entire Controversy

Pursuant to Rule 4:5-1, it is hereby certified that there is no other known action

or arbitration pending or contemplated which arises from the same facts as this matter.

## Certification of Notice Pursuant to N.J.S.A. 56:8-20

Pursuant to N.J.S.A. 56:8-20, a copy of this Complaint will be furnished to the

Office of the Attorney General of the State of New Jersey, CN 080, Trenton, New

Jersey 08625, within ten days of the filing of this action.

Dated:     June 20, 2006

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ, P.C.

By:     *Barry B. Cepelewicz*

Barry B. Cepelewicz
David J. Meiselman, pro hac vice admission pending
Jeffrey I. Carton, pro hac vice admission pending
Lindsay M. Held, pro hac vice admission pending

1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

00178885 WPD

Attorneys for Plaintiff

23