NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                            :
HADIS NAFAR, on behalf of herself and       :
all others similarly situated,              :
                                            :
           Plaintiff,                       :            Hon. Dennis M. Cavanaugh
                                            :
           v.                               :                **OPINION**
                                            :
HOLLYWOOD  TANNING  SYSTEMS,                :            Civil Action No. 06-CV-3826 (DMC)
INC.,                                       :
                                            :
           Defendant.                       :
_____

DENNIS M. CAVANAUGH, U.S. District Judge

        This matter comes before the Court upon motion by Defendant Hollywood Tanning

Systems, Inc. ("Defendant") for partial judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  No oral argument was heard pursuant to Fed. R. Civ. P. 78.

After carefully considering the submissions of the parties and for the following reasons,

Defendant's motion for partial judgment on the pleadings is **denied**.

I.    **BACKGROUND**

        Hadis Nafar ("Plaintiff") purchased monthly tanning  memberships from Defendant in

Middlesex County, New Jersey.  Nafar began purchasing monthly memberships in April 2005,

and continued through March 2006.  Plaintiff then instituted this suit against Hollywood Tans

alleging: (1) violation of the New Jersey Consumer Fraud Act, (2) fraud, (3) unjust enrichment,

and (4) breach of warranty; and (5) requesting injunctive relief.

        Nafar alleges that Hollywood Tans fraudulently omitted the fact that *any* exposure to

ultraviolet rays (UV rays) increases the risk of cancer.  Plaintiff emphasizes that "excessive exposure" to UV rays is not necessary for harm to occur and that *any* exposure can suffice. Plaintiff goes on to allege that Hollywood Tans made affirmative misrepresentations through its website.  Among these alleged misrepresentations are claims that exposure to UV rays may help with acne, customers will "look terrific," and UV rays may help those suffering from psoriasis, body weight issues, stress, and seasonal affective disorder.  Nafar contends that Hollywood Tans distorts these "benefits" and deceptively fails to warn consumers about the dangers of indoor tanning.  Defendant's website states that its tanning system "block[s] out most of the UVB rays allowing your skin to maintain natural exfoliation [which] helps high pressure tanners to stay tan longer."  While Plaintiff acknowledges that Hollywood Tans' machines may block out most UVB rays, she contends that Defendant fails to inform consumers that UVA rays, also emitted by its machines, are linked to skin cancer.

Plaintiff further alleges in her Complaint that both UVA and UVB exposure destroys cell DNA, a precursor to cancer.  In addition to direct DNA damage, Plaintiff asserts that ultraviolet light produces activated oxygen molecules that also damage DNA, as well as creating localized immunosuppression that blocks the body's natural anti-cancer defenses.  Plaintiff emphasizes that *prior to purchasing* her memberships, Defendant did not inform her about the cancer risks or other health risks attendant with UV tanning.  Plaintiff also asserts that she did not receive warnings before her sessions, and she did not sign any consents or waivers acknowledging that she was informed about the health risks of indoor tanning.  Nafar disclaims any remedy for personal injuries suffered, but proceeds on her fraud-based causes of action, which provide remedies in treble damages, injunctive relief, punitive damages, attorney's fees, and costs of suit.

Hollywood Tans notes that its tanning machines are regulated by the FDA and are required by FDA regulations to carry a label providing:

>  (1) recommended exposure positions;
>  (2) directions for achieving the recommended exposure positions and a warning that the use of other positions may result in overexposure;
>  (3) a recommended exposure schedule including duration and spacing of sequential exposures and maximum exposure times in minutes; and
>  (4) a statement of the time it may take before the expected results appear.

21 C.F.R. § 1040.20(d)(1)(ii)-(v).

Each machine also carries the following warning, as required by FDA regulations:

>  DANGER - Ultraviolet radiation.  Follow instructions.  As with natural sunlight, overexposure can cause eye and skin injury and allergic reactions.  Repeated exposure may cause premature aging of skin and skin cancer.  WEAR PROTECTIVE EYEWEAR; FAILURE TO DO SO MAY RESULT IN SEVERE BURNS OR LONG-TERM INJURY TO EYES.  Medications or cosmetics may increase your sensitivity to the ultraviolet radiation.  Consult physician before using sunlamp if you have a history of skin problems or believe yourself especially sensitive to sunlight.  If you do not tan in the sun, you are unlikely to tan from use of this product.

21 C.F.R § 1040.20(d)(1)(i).

It is undisputed that Defendant has posted these warnings on its tanning machines in compliance with the FDA regulations.

Hollywood Tans' Motion for Partial Judgment on the Pleadings seeks judgment as to each of Plaintiff's claims that rely on a failure to warn theory, namely claims (1) violation of the New Jersey Consumer Fraud Act, (2) fraud, (3) unjust enrichment, and (5) Plaintiff's request for

injunctive relief.

## II.  STANDARD OF REVIEW FOR 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant files this motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  While it is generally true that a Rule 12(c) motion for judgment on the pleadings is treated similarly to a motion to dismiss under Rule 12(b)(6), there are significant differences between a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss for failure to state a claim.

First, a Rule 12(c) motion is brought after the close of the pleadings, while a Rule 12(b)(6)  motion is brought before the close of the pleadings.  Syncsort, Inc. v. Sequential Software, Inc., 50 F. Supp. 2d 318, 324 (D.N.J. 1999).  Second, "a Rule 12(b)(6) motion to dismiss is directed solely towards the procedural defects or the statement of the Plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy."  5C Charles Alan Writht & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2004).

Thus, whereas a Rule 12(b)(6) motion tests whether a plaintiff's pleading, viewed alone, states a claim, a Rule 12(c) motion moves for judgment on those claims, as pleaded.  In this respect, the standard for decision the Court employs mirrors the summary judgment standard.

## III.  DISCUSSION

### A.  Whether Plaintiff's Consumer Fraud Claims are Subsumed by the NJPLA

Hollywood Tans contends that this is a "product liability action" governed by the New Jersey Products Liability Act ("NJPLA").  N.J.S.A. § 2A:58C-1(b)(3).  Defendant interprets Plaintiff's Complaint as alleging damage to her DNA.  This DNA damage increases her risk of cancer, which requires that the Defendant properly warn consumers of the risks involved.

Hollywood Tans asserts that Plaintiff cannot pursue a consumer fraud theory, attorneys' fees, or other theories on a failure to warn basis because the NJPLA is the sole remedy for products liability actions.

Defendant asserts that a "failure to warn" may constitute a "product defect," which is within the realm of products liability rather than consumer fraud.  See Becker v. Baron Bros., 138 N.J. 145, 151-52 (1994).  ("A failure to warn, or a failure to warn properly, can constitute a defect in a product sufficient to support an action in strict liability.").

New Jersey codified its products liability law in the NJPLA.  N.J.S.A. § 2A:58C-1 *et seq.*  The NJPLA defines a "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. § 2A:58C-1(b)(3).  Within the NJPLA's purview are claims based on harm caused by a failure "to contain adequate warnings or instructions . . . ." N.J.S.A. §2A:58C-2.

In order for the NJPLA to apply, Plaintiff must have suffered a "harm" as articulated in the statute.  The harm contemplated by the NJPLA is limited to:

> (a) physical damage to property, other than to the product
> itself;
> (b) personal physical illness, injury, or death;
> (c) pain and suffering, mental anguish or emotional harm;
> and
> (d) loss of consortium or services or other loss deriving from
> any type of harm described in subparagraphs (a) through (c)
> of this paragraph.

N.J.S.A. § 2A:58C-1(b)(2).

Hollywood Tans argues that the DNA damage suffered by the Plaintiff, which could lead to

cancer, constitutes "harm" under the NJPLA.

Defendant believes that Plaintiff is attempting to avoid the NJPLA by disclaiming recovery for personal injuries and couching her harm as "economic" – monetary harm suffered by the Plaintiff in the form of membership fees that she would not have paid but for Defendant's alleged fraudulent omissions.  Despite this "economic" harm, Defendant emphasizes that the harm was "*caused by* a product," necessitating the NJPLA's exclusive application.

The NJPLA was enacted by the New Jersey Legislature to limit the expansion of products liability law, and is thus, "the sole method to prosecute a product liability action."  Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 398 (App. Div. 1991).  The Defendant cites Repola v. Morbark Industries, Inc., 934 F.2d 483 (3d Cir. 1991), in which the Third Circuit dismissed a failure to warn claim based on negligence because it was subsumed by the NJPLA.  Additionally, in Brown v. Phillip Morris, Inc., 228 F. Supp.2d 506 (D.N.J. 2002), the court dismissed the plaintiff's intentional fraud claims because the fraud claims were also subsumed by the NJPLA.

If the Consumer Fraud Act ("CFA") claims cannot go forward and are subsumed by the NJPLA, Defendant will no longer face consumer fraud-based treble damages and counsel fees. Additionally, under the NJPLA:

> In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if . . (2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended . . . .

N.J.S.A. § 2A:58C-3(a)(2).

Also, "[i]f the warning or instruction given in connection with a drug or device or food or food

6

additive has been approved or prescribed by the . . . [FDA], a rebuttable presumption shall arise that the warning or instruction is adequate."  N.J.S.A. § 2A:58C-4.  Thus, if the NJPLA applies, Hollywood Tans will be able to take advantage of both statutory defenses.

Rather than claiming personal injury damages for "harm caused by a product," Nafar seeks to recover for economic harm that she suffered from purchasing Defendant's services without being warned of the dangers associated with indoor tanning.  Additionally, Plaintiff asserts  that Defendant only challenges Plaintiff's claims that are based on Hollywood Tan's failure to warn.  Therefore, the Complaint has not been challenged as to claims based on affirmative misrepresentation, particularly Claim 4, breach of warranty.

Plaintiff argues that the NJPLA does not apply to this case because the economic harm Nafar suffered is not contemplated within the NJPLA's definition of "harm."  In support of this proposition, Plaintiff cites to Repola, 934 F.2d at 492 (3d Cir. 1991), where the Third Circuit explained that the NJPLA is the sole remedy for "claims falling within its purview."  Therefore, the NJPLA's scope is limited by its own definitions of "product liability action" and "harm."  Id. Although Hollywood Tans argues that Nafar suffered personal injury "harm" as contemplated by the NJPLA, Plaintiff asserts that she has not suffered any personal injury harm.  Rather, she claims economic harm as a result of purchasing monthly tanning memberships that she would not have purchased but for Hollywood Tans' deceptive business practices.

In support of her claim that the NJPLA is only limited to the statute's definition of "harm," Nafar cites Knoster v. Ford Motor Co., 2006 U.S. App. LEXIS 22869 (3d Cir. Sept. 6, 2006).  In Knoster, the plaintiff brought a consumer fraud claim after a car accident, but sought damages for the car itself.  The defendant argued that the NJPLA subsumed the consumer fraud claim.  However, the Third Circuit held that the damage claim for the car itself was not the type of harm contemplated by the NJPLA; therefore, the consumer fraud claim was allowed to proceed.

Additionally, Plaintiff argues that the NJPLA applies to suits arising from "products,"

while this suit is based on Hollywood Tans' deception regarding its "services."  Plaintiff relies on Universal Underwriters Ins. Group v. Public Serv. Elec. & Gas Co., 103 F. Supp. 2d 744, 748 (D.N.J. 2000), for the proposition that "when an injury does not result from a defective product, but rather from a service, the NJPLA is inapplicable."

In refutation of Defendant's case analysis, Plaintiff points out that both Repola, 934 F.2d 483 and Brown, 228 F. Supp. 2d 506, are inapposite because they deal with "harm" as it *is* defined in the NJPLA.  Plaintiff also claims that Defendant's reliance on Estate of White v. R.J. Reynolds Tobacco Co., 109 F.Supp.2d 424, 431-32 (D. Md. 2000) is misplaced.  That court relied on the Restatement (Second) of Torts and the consumer expectations test in assessing a strict liability claim.  Here, however, Nafar is not asserting a strict liability claim, so the consumer expectation test does not apply.  If the court finds that the NJPLA applies in this case, Plaintiff seeks leave to file an amended complaint to assert claims under that statute.

Nafar alleges that Hollywood Tans misrepresented the benefits of indoor tanning and failed to disclose the harmful effects of its services.  Plaintiff further alleges that she suffered a monetary loss because but for these misrepresentations and omissions, she would not have purchased Hollywood Tans' services.   These allegations are enough to support a claim under the CFA.

Hollywood Tans argues that Nafar's claim is subsumed by the NJPLA.  For Hollywood Tans to succeed on this defense the court would have to construe a deliberate omission of material fact as a "failure to warn."  However, there are qualitative differences between a failure to warn in a products liability action and a fraudulent omission of material fact.  Here, Nafar is not claiming harm for any physical injuries she may have suffered from the use of Defendant's tanning machines, as would be appropriate in a products liability action.  Instead, she is claiming monetary harm because Defendant failed to inform her of the ill effects of indoor tanning, and had she been informed of those ill effects, she would not have purchased Defendant's services.  If Hollywood Tans can construe economic harm resulting from the omission of a material fact as

equivalent to a "failure to warn," this would render the Consumer Fraud Act inapplicable in nearly any situation where fraud is contingent on material omissions, as opposed to material misrepresentations.

**B.    Whether the Risks Associated with UV Exposure are of Such Common Knowledge that Plaintiff Cannot Prevail on a "Knowing Omission" Under the New Jersey Consumer Fraud Act**

Defendant believes that Plaintiff's consumer fraud claim is based on a "knowing omission," specifically that Hollywood Tans failed to warn consumers of the cancer risks associated with its tanning machines.  The New Jersey CFA provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission, of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.

However, Defendant contends that the CFA only prohibits conduct that would mislead the "average consumer."  See Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 115 (App. Div. 2005) (explaining that "[t]o constitute consumer fraud . . . the business practice must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . .").

Hollywood Tans argues that it is a question of law whether its "omission" constitutes consumer fraud because it must be decided whether Hollywood Tans had a duty to disclose in the first place, and "[d]uty is a question of law."  See Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418, 426 (App. Div. 2003).  In support of its argument, Defendant cites Strawn v. Canuso, 140 N.J. 43 (1995), where the New Jersey Supreme Court held that a builder-developer had a duty to

9

disclose to prospective buyers the homes' close proximity to an abandoned hazardous waste site. The <u>Strawn</u> court emphasized that the builder-developer was liable for physical conditions "known to it and unknown and not readily observable by the buyer . . . ." <u>Id.</u> at 65.  Therefore, Hollywood Tans asserts that "knowing omission" liability under the CFA arises only if the seller knows of some material fact that is unknown or not readily observable to the buyer.  <u>See</u> <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 623 N.Y.S. 2d 529, 533 (N.Y. 1995) (reasoning that the New York Consumer Fraud Act does not require businesses to "guarantee that each consumer has all relevant information," but businesses may be liable "where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); <u>Beaudreau v. Larry Hill Pontiac</u>, 160 S.W.3d 874, 881 (Ten. Ct. App. 2004) (dismissing the plaintiff's claim because "a reasonable customer should be aware that a for-profit retailer, in arranging financing for a consumer, would expect to receive some sort of remuneration for its efforts.").

Defendant first argues that whether a duty exists is a question of law.  <u>See</u> <u>Petrillo v. Goldberg</u>, 139 N.J. 472, 479 (1995) (determining that "the existence of a duty is a question of law for the court.").  Defendant contends that Plaintiff's interpretation of <u>Oswego Laborer's Local</u>, 623 N.Y.S. 2d 529 (N.Y. 1995), is improper.  Plaintiff used that case to establish that the court could not rule on the parties' knowledge as a matter of law.  Defendant emphasizes that the court does not have to determine the Plaintiff's subjective knowledge of the harms associated with indoor tanning.  Rather, the CFA applies an objective test, and Hollywood Tans argues that the court can determine, based on the facts alleged by Plaintiff and  by taking judicial notice of the articles cited by Defendant, whether the risk of cancer was of common knowledge to the

10

average consumer.

Defendant argues that Plaintiff's attempt to distinguish <u>Beaudreau</u>, 160 S.W. 3d 874, is unavailing.  In <u>Beaudreau</u>, the court ruled as a matter of law that there was no duty to disclose and no consumer fraud.  Plaintiff claims there was an imputation of knowledge in that case which is not present in this case.  The imputation was based on a Federal Reserve Ruling stating that there was no necessity to disclose the dealer reserve.  Defendant asserts that Plaintiff must now concede that she has imputed knowledge of the FDA's 1985 regulation warning that tanning machines may cause cancer.

Defendant believes that Plaintiff misinterprets the knowledge requirement for CFA actions.  In citing <u>Cipollone v. Ligget Group, Inc.</u>, 893 F.2d 541 (3d Cir. 1990), a products liability case, Plaintiff noted that the issue whether consumers know of the dangers of cigarettes is a fact issue for the jury.  However, Defendant explains that <u>Cipollone</u> was a products liability action and not a consumer fraud action.  Defendant argues that the issue of "knowledge" in a products liability action goes to the causation requirement, a fact issue.  However, in a consumer fraud action, "knowledge" goes to the question of duty, a legal determination made by the court. <u>See</u> <u>Strawn</u>, 140 N.J. 43.

Defendant explains that the risks associated with excessive exposure to UV light are commonly known, similar to the way in which the risks of excessive consumption of McDonalds' food is commonly known.  Hollywood Tans notes that in <u>Pelman v. McDonald's Corp.</u>, 237 F. Supp.2d 512 (S.D.N.Y. 2003), the court dismissed the plaintiffs' "deceptive omission" consumer fraud claims because "one necessary element of any potentially viable claim must be that McDonalds' products involve a danger that is not within the common knowledge of

11

consumers." Id. at 518. Defendant also cites a number of tobacco-related cases that support its contention. See, e.g., American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 429 (Tex. 1997) ("We conclude that the general health dangers attributable to cigarettes were commonly known as a matter of law when [plaintiff] began smoking.").

In sum, Defendant argues that the dangers of excessive UV-based tanning are common knowledge, and thus, there is no duty to disclose this information under the CFA. Since there is no duty to disclose, Defendant contends that there can be no "knowing omission" liability, and Plaintiff's CFA claim should be dismissed. Defendant concludes by addressing Plaintiff's claims that there is no such thing as a "safe tan," emphasizing that there is currently a debate regarding the harms and benefits of indoor tanning, and the scientific evidence is inconclusive.

Plaintiff argues that the issue, whether the effects of "excessive" exposure is common knowledge, has no bearing on this case. First, Nafar emphasizes that *any* exposure to UV rays is harmful; exposure need not be "excessive." Second, Nafar points out that even Hollywood Tans is under the impression that the dangers of tanning are minimal and that there are an abundance of therapeutic benefits to sunless tanning. Plaintiff emphasizes that the ill effects of *any* exposure to UV rays is *not* common knowledge because even Hollywood Tans fails to recognize that *any* exposure is harmful. Because the effects of exposure to UV rays are not common knowledge, and because the average consumer would consider such information material to their decision to purchase such services, Defendant is required to provide these facts to consumers in order to avoid a fraud action.

This Court cannot, at the pleading stage and before discovery, determine as a matter of law "what the average consumer knows or should know." Plaintiff notes that judgment on the

pleadings is only proper where the material facts are not in dispute, and in this case, the average

consumer's knowledge of the harmful effects of indoor tanning is a disputed issue.

A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) Motion to

Dismiss for Failure to State a Claim, which includes a prohibition against considering evidence

beyond the pleadings.  See Mele v. Federal Reserve Bank of New York, 359 F.3d 251, 257 (3d

Cir. 2004).

In Cippolone, 893 F.2d 54, the Third Circuit held that whether the dangerous

characteristics of cigarettes are known to the average consumer is an issue of fact for the jury.

Nafar goes on to contend that the "common knowledge" test should not be read into the CFA.

The purpose of the CFA is to prevent fraud or deception by acts of commission or omission.  See

Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 376-77 (1999).  Plaintiff argues that reading

the common knowledge test into the CFA would be in contravention of the statute, emphasizing

that the CFA is remedial and should be liberally construed to protect consumers.

Under the CFA, the "omission, of any material fact with intent that others rely upon such

concealment . . ." is unlawful.  N.J.S.A. § 56:8-2.  Hollywood Tans argues that it is only required

to disclose information if it has a "duty to disclose," and the recognition of a legal duty is a question

of law.  In doing so, Hollywood Tans conflates a "duty to disclose" with the issue of materiality.

For Plaintiff to succeed on her CFA claim, she has the burden of demonstrating that the ill

effects of tanning are "material facts," facts that would be important to a consumer's decision

whether or not to purchase Defendant's product.  It is the materiality of those facts, the ill effects of

tanning, which is at issue.  The ill effects of tanning would not be material if the average consumer

knows about these ill effects, and this information *would be material* if the average consumer does

13

not know about the ill effects.  Determining the materiality of a misrepresentation or omission is a question of fact, not a question of law.

Because both parties dispute the very existence of any  ill effects related to tanning, this is an issue to be resolved at trial.  At this pleading stage, all disputed  issues of material fact are resolved in favor of the non-moving party.

**IV.**   **CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendant's motion for partial judgment on the pleadings is **denied.**  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh_____
Hon. Dennis M. Cavanaugh, U.S.D.J.

Date:      April   5, 2007

14