NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HADAS NAFAR, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HOLLYWOOD TANNING SYSTEMS, INC., <br><br> Defendants. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 06-CV-3826 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff Hadas Nafar's ("Plaintiff") motion for class certification pursuant to Fed. R. Civ. P. 23(a), 23(b), and 23(g). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion for class certification is **granted**.

**I.   BACKGROUND**

Plaintiff purchased monthly tanning memberships from Defendant Hollywood Tanning Systems, Inc. ("Defendant") in Middlesex County, New Jersey. Plaintiff began purchasing monthly memberships in April 2005, and continued through March 2006. Plaintiff then instituted this suit against Defendant alleging: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), (2) fraud, (3) unjust enrichment, and (4) breach of warranty; (5) requesting

injunctive relief.

Plaintiff alleges that Defendant fraudulently omitted the fact that *any* exposure to ultraviolet rays (UV rays) increases the risk of cancer.  Plaintiff emphasizes that "excessive exposure" to UV rays is not necessary for harm to occur and that *any* exposure can suffice.  Plaintiff alleges that Defendant made affirmative misrepresentations through its website.  Among these alleged misrepresentations are claims that exposure to UV rays may help with acne, customers will "look terrific," and UV rays may help those suffering from psoriasis, body weight issues, stress, and seasonal affective disorder.  Plaintiff contends that Defendant distorts these "benefits" and deceptively fails to warn consumers about the dangers of indoor tanning.  Defendant's website states that its tanning system "block[s] out most of the UVB rays allowing your skin to maintain natural exfoliation [which] helps high pressure tanners to stay tan longer."  While Plaintiff acknowledges that Defendant's machines may block out most UVB rays, she contends that Defendant fails to inform consumers that UVA rays, also emitted by its machines, are linked to skin cancer.

Plaintiff further alleges in her Complaint that both UVA and UVB exposure destroys cell DNA, a precursor to cancer.  In addition to direct DNA damage, Plaintiff asserts that ultraviolet light produces activated oxygen molecules that also damage DNA, as well as creating localized immunosuppression that blocks the body's natural anti-cancer defenses.  Plaintiff emphasizes that *prior to purchasing* her memberships, Defendant did not inform her about the cancer risks or other health risks attendant with UV tanning.  Plaintiff also asserts that she did not receive warnings before her sessions, and she did not sign any consents or waivers acknowledging that

2

she was informed about the health risks of indoor tanning. Plaintiff disclaims any remedy for personal injuries suffered, but proceeds on her fraud-based causes of action, which provide remedies in treble damages, injunctive relief, punitive damages, attorney's fees, and costs of suit.

Defendant notes that its tanning machines are regulated by the FDA and are required by FDA regulations to carry a label providing:

> (1) recommended exposure positions;
> (2) directions for achieving the recommended exposure positions and a warning that the use of other positions may result in overexposure;
> (3) a recommended exposure schedule including duration and spacing of sequential exposures and maximum exposure times in minutes; and
> (4) a statement of the time it may take before the expected results appear.

21 C.F.R. § 1040.20(d)(1)(ii)-(v).

Each machine also carries the following warning, as required by FDA regulations:

> DANGER - Ultraviolet radiation. Follow instructions. As with natural sunlight, overexposure can cause eye and skin injury and allergic reactions. Repeated exposure may cause premature aging of skin and skin cancer. WEAR PROTECTIVE EYEWEAR; FAILURE TO DO SO MAY RESULT IN SEVERE BURNS OR LONG-TERM INJURY TO EYES. Medications or cosmetics may increase your sensitivity to the ultraviolet radiation. Consult physician before using sunlamp if you have a history of skin problems or believe yourself especially sensitive to sunlight. If you do not tan in the sun, you are unlikely to tan from use of this product.

21 C.F.R § 1040.20(d)(1)(i).

It is undisputed that Defendant has posted these warnings on its tanning machines in compliance with the FDA regulations.

On May 16, 2008, Plaintiff filed a motion for class certification pursuant to Fed. R. Civ. P. 23(a), 23(b) and 23(g). Plaintiff asserts that her claim was one uniquely adept for class-wide treatment and that she satisfied the requirements of Fed. R. Civ. P. 23(a), 23(b) and 23(g). Defendant replies that Plaintiff's claims are not conducive to class-wide treatment and that Plaintiff does not satisfy many of the requirements for class certification.

**II.     STANDARD OF REVIEW**

To obtain class certification, the moving party must prove that the class action satisfies the requirements of Fed. R. Civ. P. 23(a). These requirements are (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. In addition, pursuant to Fed. R. Civ. P. 23(b)(3), this Court must determine if Plaintiff has satisfied requirements of predominance and superiority–namely, whether common questions of law or fact predominate and whether the class action represents the superior method for adjudicating the case. See Newton v. Merril Lynch, 259 F.3d 154, 181 (3d Cir. 2001). As movant, Plaintiff bears the burden of demonstrating that all the requirements of Fed. R. Civ. P. 23 are met. See Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 386 (D.N.J. 1998). If Plaintiff satisfies this burden, then, pursuant to Fed. R. Civ. P. 23(g), "unless a statute provides otherwise, a court that certifies a class must appoint counsel."

**III.    DISCUSSION**

    **A.    Fed. R. Civ. P. 23(a) Requirements**

        **1.    Numerosity**

To satisfy the Fed. R. Civ. P. 23(a)(1), the proposed class must be "so numerous that

joinder of all members is impracticable." See also In re Mercedes-Benz Antitrust Litigation, 213 F.R.D. 180, 184 (D.N.J. 2003). In this context, "impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J. 1990) (quoting Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964)); See also Moskowitz v. Lopp, 128 F.R.D. 624 (E.D. Pa. 1989).

Plaintiff asserts, and Defendant has stipulated, that the number of potential plaintiffs is so numerous such that joinder of all potential plaintiffs is impracticable. Hence, numerosity is satisfied.

**2.    Commonality**

Fed. R. Civ. P. 23(a)(2) states that commonality exists if "there are questions of law or fact common to the class." All claims or facts do not have to be common to all class members; "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994); See also Johnston v. HBO Film Management, Inc., 265 F.3d 178, 184 (3d Cir. 2001). Further, "factual differences among the putative claims of the class members will not defeat certification." Id. at 56. Lastly, with respect to the related criteria of commonality, the United States Court of Appeals for the Third Circuit "has recognized that courts have set a low threshold for satisfying this requirement." Georgine v. Amchem Prods. Inc., 83 F.3d 610, 627 (3d Cir. 1996).

Plaintiff has asserted no less than six common issues of law and fact. For example,

5

Plaintiff asserts that Defendant's marketing and sales practices are fraudulent, deceptive, misleading, or improper; that Defendant violated the NJCFA by uniformly mislabeling labels attached to its tanning booths; that Defendant's labels do not comply with federal law; and that Defendant uniformly fails to describe the health hazards and ill effects associated with indoor tanning. Plaintiff also asserts that Defendant's uniform course of conduct toward all class members supports a finding of commonality, as consistent with prior case law. See Chiang v. Veneman, 385 F.2d 256, 266 (3d Cir. 2004); Dal Ponte v. American Mortgage Express Corp., 2006 U.S. Dist. LEXIS 57675 (D.N.J. 2006).

Plaintiff's given reasons satisfy the commonality requirement. Plaintiff has asserted common issues of law and fact and has also alleged a uniform scheme or uniform course of conduct, which "would support a finding of predominance even where injuries resulting from a...scheme were different for each class member." Chiang, 385 F.2d at 266. Plaintiff satisfies the commonality requirement.

### 3. Typicality

To satisfy Fed. R. Civ. P. 23(a)(3)'s typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Weisfield v. Sun Chem. Corp.,

210 F.R.D. 136, 140 (D.N.J. 2002) (citing Baby Neal, 43 F.3d at 57). The "typicality" requirement is satisfied as long as the Lead Plaintiff, the other representatives, and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." In re Lucent Techs., Inc. Sec. Litig., 307 F. Supp. 2d 633, 640 (D.N.J. 2004); See also In re Mercedes-Benz, 213 F.R.D. 180, 185 (D.N.J. 2003). Similar to the commonality requirement, "factual differences between the claims of the putative class members do not defeat certification." Baby Neal, 43 F.3d at 56. Further, "[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." Sun Chem., 210 F.R.D. at 140 (quoting In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)).

Typicality is only destroyed "where the defenses against named plaintiffs are likely to consume a significant portion of the litigant's time and energy and where there is a danger that preoccupation with defenses unique to the representatives will cause absent class members to suffer." In re Systems Software Assocs., Sec. Litig., 2000 U.S. Dist. LEXIS 18285 *6 (D. Ill. 2000). The Third Circuit has held that in order to defeat class certification, a defendant must show the "likelihood a unique defense will play a significant role at trial." Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006). It should be noted that, "a unique defense is merely a factor that informs the court's decision on class certification and need not destroy typicality." In re Systems, 2000 U.S. Dist LEXIS 18285 at *6.

Here, Plaintiff's claims are typical of the class' claims. Plaintiff alleges uniform violations, resulting from the typical experience of a Hollywood Tans customer. Plaintiff alleges

7

that the violations result from Defendant's uniform practices, from allegedly mislabeled equipment, from allegedly false advertising and so forth. Plaintiff asserts that the information Defendant delivered was typical to all of Defendant's customers. Plaintiff's claims, related to her experiences with Defendant, are typical of the claims that other class members may harbor. Plaintiff was a typical respondent to Defendant's advertising, which promised a tan for those too busy to get one outdoors. Plaintiff, like the other class members, had basic awareness that UV exposure correlated with health risks. Therefore, typicality is satisfied.

Although Defendant claims that it has a "unique defense" to Plaintiff's claims, this factor is not persuasive enough to destroy this Court's finding of typicality. While a unique defense will preclude certification where it could rationally become the focal point of a given litigation, this Court is not convinced that Defendant's defense will occupy such a strong position in this litigation. Contra Zenith Laboratories, Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir. 1976). Defendant's defense may well apply to the proposed class. Rather than provide a unique, tailored defense to Plaintiff's particular situation, Defendant has provided a generalized defense that could apply to the majority, or entire, class. Therefore, this Court finds that Plaintiff satisfies the typicality requirement.

    **4.**  **Adequacy of Representation**

To satisfy Fed. R. Civ. P. 23(a)(4)'s adequacy of representation factor, "the representative parties must fairly and adequately protect the interests of the class." To assess whether this requirement is met, the Court must look to two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff

8

must not have interests antagonistic to those of the class." Prudential I, 962 F. Supp. at 519.

                **a.**     **Qualifications of the Proposed Class Attorney**

With regard to the first prong, Plaintiff has appointed Mieselman, Dencla, Packman, Carton & Eberz P.C. ("MDPCE") as Lead Plaintiff. MDPCE has spent over 1,000 hours analyzing Plaintiff's case. The firm's attorneys, including the principal attorneys involved in this matter, have extensive experience in both complex civil litigation and consumer class actions. Defendant does not object to MDPCE's qualifications. Therefore, the first prong of the representation requirements has been met.

                **b.**     **Protection of Class Interests**

With regard to the second prong, the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" and does not mandate that the interests of all class members be identical. Anchem Prods. Inc. v. Windsor, 521 U.S. 591, 625 (1997). "A class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." Pickett v. Iowa Beef Processors, 209 F.3d 1276 (11th Cir. 2000). Further, when Lead Plaintiffs have a "strong interest in establishing liability...[and] seek similar damages for similar injuries," the adequacy requirement can be met. In re Tyson Foods Secs. Litig., 2003 U.S. Dist. LEXIS 17904, 17-18 (D. Del. 2003). Here, Plaintiff's interests do not conflict with the class' interests and Plaintiff has a strong interest in vigorously prosecuting this litigation.

While Defendant disputes Plaintiff's motives in prosecuting this claim, this Court agrees that Plaintiff will protect the class' interests. Plaintiff states that she solicited MDPCE and not

9

vice versa. Plaintiff has proclaimed that she is committed to ensuring that Defendant cease any allegedly fraudulent behavior and that Defendant fully disclose the risk of indoor ultraviolet exposure. Plaintiff has complied with discovery and remains actively involved with MDPCE's work. Furthermore, Plaintiff has no agreement as to what she will receive from the lawsuit. Plaintiff's interests align with the class' interests and Plaintiff has remained a vigorous party to this litigation. Plaintiff satisfies the adequacy requirement.

### B. Fed. R. Civ. P. 23(b) Requirements

#### 1. Predominance of Common Questions of Law and Fact

Certification pursuant to Fed. R. Civ. P. 23(b)(3) requires a finding by the Court that common questions of law or fact predominate over individual issues. See Prudential I, 962 F. Supp. at 510-11. "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication." Id. at 511. However, "[t]he mere existence of individual issues will not of itself defeat class certification." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 186 (D.N.J. 2003). See also Prudential II, 148 F.3d at 315; Sun Chem., 210 F.R.D. at 141. Rather, courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation. See, e.g. Prudential I, 962 F. Supp. at 511. (gathering authority). Similarly, "[i]n cases where it is alleged that the defendant . . . engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements." Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 231 (D.N.J. 2005). Additionally, the need to calculate "damages on an individual basis should

10

not preclude class [certification] when the common issues which determine liability predominate." Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137 (3d Cir. 2000) (emphasis in original); see also Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1997). Nonetheless, federal courts have noted that "predominance is a test readily met in certain cases alleging consumer or securities fraud." Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 182 (S.D.N.Y. 2005); see also Anchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997). Here, common questions of both law and fact predominate.

Common questions of law predominate because New Jersey law is central to this litigation. The NJCFA will apply to all class members because this particular law governs Defendant's behavior and uniform policies. New Jersey has a strong interest in this litigation because the case's outcome will likely affect Defendant's nationwide behavior. As stated in Dal Ponte,

> Many states can claim members of the proposed class as residents, including New Jersey. These contacts are clearly relevant to the litigation, as each state has an interest in applying its consumer fraud laws to ensure that its citizens and domiciliaries are protected and compensated. It is equally apparent, however, that the interests of these states would not be frustrated by the application of the NJCFA.

Dal Ponte, 2006 U.S. Dist. LEXIS 57675, *18-19. Indeed, the NJCFA is one of this nation's strongest consumer protection laws and its application will not frustrate other states' consumer protection laws. Id. at *20. Hence, common issues of law predominate.

Common issues of fact also predominate. Defendant's alleged misrepresentations and omissions concerning the negative consequences related to indoor tanning are alleged to be

11

uniform. Plaintiff claims that Defendant's allegedly misbranded equipment was delivered nationwide and that the policies that Plaintiff complains of were practiced nationwide. Regardless of the merits of Plaintiff's complaints, the questions of fact are common to all class members rather than to a particular plaintiff or region. Commonality predominates over individuality.

Plaintiff satisfies the requirement of commonality because common questions of law and fact predominate.

### 2. Prosecution of a Class Action is Superior to Other Available Methods for Fair and Efficient Adjudication of the Controversy

In addition to predominance, Fed. R. Civ. P. 23(b)(3) also requires that a "class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." In evaluating whether the superiority requirement is satisfied, the Court looks to four non-exclusive factors:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiff satisfies this superiority requirement: First, it is in the interest of individual class members to litigate as a class. If the class members brought their own separate claims, they would likely spend too much money and suffer hardship litigating against Defendant. Additionally, the members of the class are easily ascertainable, as provided by Defendant's

12

databases, as well. Second, no other lawsuits allege the same matters as this action, meaning that no class member has commenced this or similar litigation elsewhere. Third, New Jersey is a desirable forum for this action because Defendant is a New Jersey corporation. Indeed, New Jersey may have the greatest interest in this case. See Dal Ponte, 2006 U.S. Dist. LEXIS 57675; also Veazy v. Doremus, 103 N.J. 244, 249 (1986). Defendant manufactures its tanning booths in New Jersey, trains franchise owners in New Jersey, controls its advertising, decor guidelines, and prices in New Jersey, etc. Defendant is governed by New Jersey law, regardless of each franchise's state of operation. New Jersey is a desirable forum. Fourth, class certification will also ensure efficient litigation by avoiding duplicative litigation. Accordingly, this Court finds that Plaintiff satisfies the superiority requirement.

### C. **Appointment of Class Counsel**

Pursuant to Fed. R. Civ. P. 23(g), "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." A court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

MDPCE is appropriate class counsel. As discussed earlier, MDPCE has already invested

13

a lot of time with Plaintiff's case, has extensive experience in handling class actions and other complex litigation, has appropriate knowledge of the applicable law, and is willing to devote its resources to representing the class.  MDPCE has the ability to fairly and adequately represent the interests of the class.  Therefore, this Court appoints MDPCE as class counsel, pursuant to Fed. R. Civ. P. 23(g).

**IV.** **CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiff's motion for class certification is **granted** and MDPCE is appointed as Plaintiff's class counsel.  An appropriate Order accompanies this Opinion.

        S/ Dennis M.Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:        August  11 , 2008
Orig.:        Clerk
cc:        All Counsel of Record
        Hon. Mark Falk, U.S.M.J.
        File