NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HADAS NAFAR, on behalf of herself and all others similarly situated, : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : : | **OPINION** |
| v. : : | Civil Action No. 06-CV-3826 (DMC) |
| HOLLYWOOD TANNING SYSTEMS, INC., : : : | |
| Defendant. : : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

     This matter comes before the Court upon motion of Defendant Hollywood Tanning Systems, Inc. ("Defendant"). Defendant moves for partial judgment on the pleadings, asserting that Plaintiff Hadas Nafar's ("Plaintiff") consumer fraud claims are in large part subsumed by the New Jersey Products Liability Act ("PLA").

     Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion is **granted**.[1]

---

[1] Also pending before this Court is Plaintiff's motion to certify a class. This Opinion, however, has implications for the consumer fraud claims upon which Plaintiff relies in seeking class certification. Accordingly, Plaintiff's current motion for class certification, as is, can no longer be considered. Plaintiff, if she seeks to certify a class in this matter, is instructed to modify her motion for class certification in accordance with this Opinion.

# I.  BACKGROUND[2]

### A.  THE COMPLAINT

Defendant is the franchisor of a chain of tanning salons, and is incorporated and has its principal place of business in New Jersey.  Defendant manufactures the tanning booths,  provides the computer software system, and creates the marketing materials that its franchisees use.  These activities, and others, are performed in New Jersey.

Plaintiff purchased monthly tanning memberships from Defendant in Middlesex County, New Jersey.  She began purchasing monthly memberships in April 2005, and continued through March 2006.  Plaintiff instituted this suit against Defendant alleging: (1) violation of the New Jersey Consumer Fraud Act ("CFA"), (2) fraud, (3) unjust enrichment, and (4) breach of warranty.

In her Complaint, Plaintiff alleges that

Defendant not only exaggerates and distorts the "benefits" of indoor tanning but also deceptively fails to provide adequate warnings, notices or any relevant, material information concerning their ultraviolet (UV) services, and specifically—and most dangerously—fails to warn customers about the risks of cancer, including basal cell carcinoma and squamous cell carcinoma.

Complaint ¶ 3.

Plaintiff also alleges that Defendant made affirmative misrepresentations through its website. Among these alleged misrepresentations are its claims that customers will "look terrific," and that exposure to UV rays may help those with acne, psoriasis, body weight issues, stress, and seasonal affective disorder.  Plaintiff further alleges that Defendant's website misleads consumers by stating that its tanning system "block[s] out most of the UVB rays allowing your skin to maintain natural

---

[2] The facts in the Background section are taken from the parties' submissions.

exfoliation [which] helps high pressure tanners to stay tan longer."[3]

Plaintiff also alleges that both UVA and UVB exposure destroys cell DNA, a precursor to cancer. In addition to direct DNA damage, Plaintiff asserts that ultraviolet light produces activated oxygen molecules that also damage DNA, and creates localized immunosuppression that blocks the body's natural anti-cancer defenses.

Plaintiff emphasizes that Defendant did not inform her about the cancer risks or other health risks attendant with UV tanning. Plaintiff also asserts that she did not receive warnings before her sessions, and did not sign any consents or waivers acknowledging that she was informed of the health risks of indoor tanning.

Plaintiff disclaims any remedy for personal injuries suffered, but proceeds on her fraud-based causes of action, which provide remedies in treble damages, injunctive relief, punitive damages, attorney's fees, and costs of suit.

### B. FDA REQUIREMENTS

Tanning machines are regulated by the FDA and are required by FDA regulations to carry a label providing:

> (1) recommended exposure positions;
> (2) directions for achieving the recommended exposure positions and a warning that the use of other positions may result in overexposure;
> (3) a recommended exposure schedule including duration and spacing of sequential exposures and maximum exposure

---

[3] While Plaintiff acknowledges that Defendant's machines may block out most UVB rays, she contends that Defendant fails to inform consumers that UVA rays, also emitted by its machines, are linked to skin cancer. Plaintiff asserts that Defendant fraudulently omitted the fact that any exposure to ultraviolet rays increases the risk of cancer, and that "excessive exposure" to UV rays is not necessary for harm to occur.

> times in minutes; and
> (4)  a statement of the time it may take before the expected
> results appear.

21 C.F.R. § 1040.20(d)(1)(ii)-(v).  Each machine also carries the following warning, as required by

FDA regulations:

> DANGER - Ultraviolet radiation.  Follow instructions.  As
> with natural sunlight, overexposure can cause eye and skin
> injury and allergic reactions.  Repeated exposure may cause
> premature aging of skin and skin cancer.  WEAR
> PROTECTIVE EYEWEAR; FAILURE TO DO SO MAY
> RESULT IN SEVERE BURNS OR LONG-TERM INJURY
> TO EYES.  Medications or cosmetics may increase your
> sensitivity to the ultraviolet radiation.  Consult physician
> before using sunlamp if you have a history of skin problems or
> believe yourself especially sensitive to sunlight.  If you do not
> tan in the sun, you are unlikely to tan from use of this product.

Nafar v. Hollywood Tanning Sys., 339 Fed. Appx. 216, 217-18 (3d Cir. N.J. 2009) (citing 21 C.F.R

§ 1040.20(d)(1)(i).[4]

It is undisputed that Defendant has posted these warnings on its tanning machines in

compliance with FDA regulations.


C.  PROCEDURAL HISTORY

On June 21, 2006, Plaintiff filed the Complaint in this matter on behalf of herself and all

others similarly situated (individuals who purchased indoor tanning services from Defendant).  On

August 14, 2006, this matter was removed to this Court pursuant to 28 U.S.C. § 1332.

---

[4] Hollywood Tans' tanning booths contain the labels excepted above. The Hollywood
Tans labels, however, differ from the model labels prescribed by the FDA in that they omit the
words 'Avoid overexposure' at the beginning of the warning and add the word 'possible' before
'allergic reactions.'" Nafar, 339 Fed. Appx. at 218.

On September 5, 2006, Defendant moved for judgment on the pleadings, asking this Court to find that Plaintiff's consumer fraud claims were largely subsumed by the New Jersey's Product Liability Act and thus not separately actionable under any other legal theories . That is, Defendant argued that, to the extent Plaintiff's claims are based an alleged "failure to warn," her claims sound in products liability rather than consumer fraud.

On April 5, 2007, this Court denied the motion and observed that "Nafar is not claiming harm for any physical injuries she may have suffered from the use of Defendant's tanning machines, as would be appropriate in a products liability action. Instead, she is claiming monetary harm because Defendant failed to inform her of the ill effects of indoor tanning, and had she been informed of those ill effects, she would not have purchased Defendant's services." Nafar v. Hollywood Tanning Sys., 2007 U.S. Dist. LEXIS 26312, at *14-15 (D.N.J. Apr. 5, 2007).

In an Opinion and Order dated August 11, 2008, this Court certified a nationwide class of Hollywood Tans customers, and permitted Plaintiff to proceed on her consumer fraud claims. On August 5, 2009, the Third Circuit vacated this Court's class certification Order, and remanded the matter to this Court on the issue of certification.

In November 2009, Plaintiff again moved to certify a class with respect to her consumer fraud claims. This motion is currently pending before this Court.

Defendant has also filed a renewed motion for partial judgment on the pleadings. Defendant asserts that, in light of new legal authority, Plaintiff's consumer fraud claims may in large part be subsumed by the PLA. As such, Defendant asks that this Court reassess whether the PLA subsumes Plaintiff's consumer fraud claims.

## II.  STANDARD OF REVIEW

FED. R. CIV. P. 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed.  A Rule 12(c) motion must be decided using the same guidelines used to decide a Rule 12(b)(6) motion to dismiss for failure to state a claim.  See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004) ("There is no material difference in the applicable legal standards").

In deciding a motion for judgment on the pleadings, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard.  550 U.S. 544 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In evaluating a motion for judgment on the pleadings, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp.

v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).  If no relief could be granted under any

set of facts that could prove consistent with the allegations in the Complaint, the Court may dismiss

the Complaint for failure to state a claim.  See Hishon v. Spalding, 467 U.S. 69, 73 (1984);

Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

As with a motion under 12(b)(6), on a motion for judgment on the pleadings "[t]he defendant

bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d

744, 750 (3d Cir. 2005).

## III.  DISCUSSION

Defendant moves for partial judgment on the pleadings, arguing that **(A)** in light of new legal

authority, this Court must reassess its previous denial of Defendant's motion on the pleadings, and

**(B)** Plaintiff's consumer fraud claims, insofar as they are premised upon a "failure to warn" theory,

must be subsumed by the PLA.

Plaintiff responds that the law of the case doctrine precludes this Court from revisiting

Defendant's motion for judgment on the pleadings, and that her consumer fraud claims do not fall

within the scope of the PLA.

### A.  THE LAW OF THE CASE DOCTRINE

Defendant asks this Court to reconsider its previous denial of its motion on the pleadings in

light of intervening judicial decisions from the Supreme Court of New Jersey and the Appellate

Division.  Plaintiff responds that the law of the case doctrine prevents the Court from doing so.  The

Court agrees with Defendant, and finds that a reassessment of Defendant's motion is appropriate

under the circumstances.

1.  <u>Applicable Law</u>

The law of the case doctrine precludes courts from deciding issues that were resolved earlier in the litigation.  <u>Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 116 (3d Cir. 1997).  The doctrine was designed to promote finality and judicial economy.  <u>Id.</u>

Nonetheless, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances."  <u>Christianson v. Colt Industries Operating Corp.</u>, 486 U.S. 800, 817 (1988).  The Third Circuit has "recognized several 'extraordinary circumstances' that warrant a court's reconsideration of an issue decided earlier in the course of litigation."  <u>Magnesium Elektron, Inc.</u>, 123 F.3d at 116.  These circumstances "include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice."  <u>Id.</u> (citing <u>Bridge v. U.S. Parole Commission</u>, 981 F.2d 97, 103 (3d Cir. 1992) and <u>Hayman Cash Register Co. v. Sarokin</u>, 669 F.2d 162, 169-70 (3d Cir. 1982).

2.  <u>Analysis</u>

This Court finds that "extraordinary circumstances" exist such that the Court must reconsider an issue that was previously decided in the course of this litigation.  <u>Magnesium Elektron, Inc.</u>, 123 F.3d at 116.  In particular, a number of cases have been decided by the Supreme Court of New Jersey and the Appellate Division that compel a modification of this Court's previous decision with regard to whether the PLA subsumes certain claims asserted by Plaintiff..

In denying Defendant's initial motion for judgment on the pleadings, this Court determined that Plaintiff's claims were properly characterized as consumer fraud claims, and not within the

scope of the PLA.  The Court noted that Plaintiff "is claiming monetary harm because Defendant failed to inform her of the ill effects of indoor tanning, and had she been informed of those ill effects, she would not have purchased Defendant's services."  Nafar, 2007 U.S. Dist. LEXIS 26312, at *14-15.  The Court's decision was substantially based on the variety of harm alleged by Plaintiff:  the Court emphasized that "Nafar is not claiming harm for any physical injuries she may have suffered from the use of Defendant's tanning machines." Id.  Absent any physical harm, or other variety of harm explicitly covered by the PLA, the Court determined that Plaintiff's claims must be treated as consumer fraud claims that do not fall within the scope of the PLA.  Accordingly, the Court found that Plaintiff's claims were not subsumed by the PLA.

Several new judicial opinions—all of which were decided after this Court's denial of Defendant's motion for judgment on the pleadings—require a reconsideration of that result.  See, e.g., Sinclair v. Merck & Co., 195 N.J. 51, 65-66 (2008) (holding that plaintiff's CFA claim was subsumed by PLA even though PLA claim failed because plaintiff did not allege one of PLA's actionable harms); In re Lead Paint Litig., 191 N.J. 405, 436-37 (2007) (holding that plaintiffs' public nuisance claims predicated upon an alleged failure to warn were "cognizable only as product liability claims" because "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products"); McDarby v. Merck & Co., 401 N.J. Super. 10, 97 (App. Div. 2008) (finding that the PLA subsumed plaintiff's CFA claim for economic damages predicated upon an alleged failure to warn of product's risks).  These cases are instructive (in fact, dispositive) to this Court's assessment of the viability of Plaintiff's consumer fraud claims, as they evidence the wide reach that must be given to the PLA.

-9-

The scope of the PLA is critical here, as any claim within its coverage (i.e., products liability claims) cannot also be brought pursuant to the CFA.   As discussed in more detail below, developments in New Jersey law concerning the PLA indicate that Plaintiff's consumer fraud claims must (at least in part) be subsumed by the PLA.

**B. DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendant moves for partial judgment on the pleadings, asserting that Plaintiff's consumer fraud claims must be subsumed by the PLA to the extent they are based upon Defendant's "failure to warn" of potential dangers associated with its tanning beds.  Plaintiff responds that the PLA does not subsume her claims, as they fall outside the scope of the PLA.  The Court agrees with Defendant.

1. <u>Applicable Law</u>

In 1987 the Legislature enacted the PLA based on an "urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products." N.J.S.A. 2A:58C-1(a).  In so doing, "[t]he Legislature intended … to limit the liability of manufacturers so as to 'balance [] the interests of the public and the individual with a view towards economic reality.'" <u>Zaza v. Marquess & Nell, Inc.</u>, 144 N.J. 34, 675 A.2d 620, 627 (N.J. 1996) (quoting <u>Shackil v. Lederle Labs.</u>, 219 N.J. Super. 601, 530 A.2d 1287, 1309 (N.J. 1989)). The New Jersey Supreme Court has observed that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." <u>In re Lead Paint Litigation</u>, 191 N.J. 405, 924 A.2d 484, 503 (N.J. 2007).  A product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim,

-10-

except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3).

A plaintiff can prove that a product was defective in one of three ways; the PLA reads, in relevant part:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. **failed to contain adequate warnings or instructions**, or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2 (emphasis added). Therefore, a claim under the PLA may be brought alleging a manufacturing defect, a design defect or a failure to warn of a potential harm associated with using the product.

In a failure to warn case, "the plaintiff does not allege that the design or structure of the product was defective[, but r]ather, the defect is in the failure to warn unsuspecting users that the product can potentially cause injury." Zaza, 675 A.2d at 632; see Coffman v. Keene Corp., 133 N.J. 581, 628 A.2d 710, 715-16 (N.J. 1993).

With respect to Plaintiff's consumer fraud claims, the CFA was designed to protect consumers from seller's wrongful conduct and fraudulent practices. See Sprenger v. Trout, 375 N.J. Super. 120, 866 A.2d 1035, 1044-45 (N.J. Super. Ct. App. Div. 2005). The CFA applies to the purchase of "goods or services." Marascio v. Campanella, 298 N.J. Super 491, 689 A.2d 852 (App. Div. 1997). To maintain a claim under the CFA, a plaintiff must show:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with subsequent performance of

-11-

such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is cleared to be unlawful practice.

N.J. Stat. Ann. § 56:8-2.  To state a claim under the CFA, a plaintiff must establish (1) a defendant's unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 929 A.2d 1076, 1086 (N.J. 2007).

The CFA provides for a unique set of remedies, which are different from those afforded to plaintiffs under the PLA.  When a plaintiff prevails in an action under the CFA, "the court shall, in addition to any other appropriate legal or equitable relief, award threefold damages sustained by any person in interest." N.J. Stat. Ann. 56:8-19.  Additionally, "[i]n all actions under [the CFA] the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."  Id.

### 2.  Analysis

This Court must determine whether, in light of the cases decided since the issuance of the Court's April 5, 2007 Opinion, Plaintiff's consumer fraud claims can be maintained.

Defendant argues that Plaintiff's consumer fraud claims are subsumed by the PLA.  Plaintiff responds that her claims cannot be subsumed by the PLA because (i) Defendant's allegedly fraudulent conduct pertained to "services" and not "goods," and (ii) the PLA does not cover the variety of consumer fraud claims being asserted by Plaintiff.

> *(i)      The Fact that Defendant Operates a Tanning "Service" does Not Prevent its Alleged Omissions/Misrepresentations Regarding its Tanning Beds from Being Actionable under the PLA.*

Plaintiff argues that the PLA cannot subsume her consumer fraud claims, because the PLA only applies to "products" and Defendant provides a "service."  Accordingly, Plaintiff asserts that

her claims cannot be characterized as "failure to warn" products liability claims.   This argument is unavailing.

The PLA provides that "[a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom **the product is intended to be used**."   N.J. Stat. Ann. § 2A:58C-4 (emphasis added).   The statute imposes on a manufacturer a duty "to take reasonable steps to ensure that appropriate warnings for safe use reach **foreseeable users** of the equipment."   See Grier v. Cochran Western Corp., 308 N.J. Super 308, 317 705 A.2d 1262 (App. Div. 1998)  (emphasis added).   The fact that Defendant's franchises provided Plaintiff with a service does not obviate Defendant's duty to warn intended users of potential dangers with the product it designs and manufactures.   It is of no moment that Plaintiff was not a direct purchaser of the product—she was a foreseeable user.

Defendant's service itself did not cause the harm, if any, suffered by Plaintiff.   The alleged harm results from the purported lack of adequate warning(s) on Defendant's product.   Moreover, this is not an instance where Defendant provided a service and the purportedly defective "product" was simply incidental to that service.   See, e.g., Doerflein v. Six Flags Great Adventure, 2006 N.J. Super. LEXIS 279, at *9 (App. Div., Feb. 22, 2006) (collecting cases).   Here, instead, Defendant manufactured, designed and distributed the tanning beds used in its franchises.   Any injury arising out of the use of the beds is properly characterized as a products liability action.

Plaintiff's claims premised upon Defendant's "failure to warn" of the dangers with its tanning beds must be considered claims falling with the PLA.

(ii)     *The PLA Covers Claims Premised upon Omissions/ Misrepresentations as to a Product's Dangers, Therefore under Plaintiff's Consumer Fraud Claims are Subsumed by the PLA.*

Plaintiff asserts that the conduct that forms the basis for its consumer fraud claims (i.e., Defendant's alleged omissions/misrepresentations as to the safety of its tanning beds) is not covered by the PLA.  In particular, Plaintiff asserts that there is a distinction between "failure to warn" products liability claims under the PLA, and claims based on affirmative misrepresentation/fraudulent omissions.

First, the Court must consider the allegations in Plaintiff Complaint as a whole.  The Complaint states that "[t]his action seeks redress for the fraudulent, deceptive, and otherwise improper business practices that Defendant is engaging in with respect to Defendant's indoor tanning services."  Complaint ¶ 1.  Plaintiff alleges that Defendant promotes the "benefits of tanning," saying that customers "will look terrific," and that tanning will help to clear acne, and has benefits with respect to psoriasis, body weight, stress, and seasonal affective disorder.  Id. ¶2.  Plaintiff claims that "Defendant not only exaggerates and distorts the 'benefits' of indoor tanning but also deceptively fails to provide adequate warnings, notices or any relevant, material information concerning their ultraviolet (UV) services, and specifically—and most dangerously—fails to warn customers about the risks of cancer, including basal cell carcinoma and squamous cell carcinoma."  Id. ¶3.  Plaintiff alleges that "Defendant goes so far as to 'train' its franchisees and employees to emphasize and highlight to customers that Defendant's indoor tanning machines are safe because they use 'special filters' that allow for a healthy and safe tan."  Id. ¶4.  Plaintiff asserts that these representations are not accurate, and that "Defendant fails to warn customers that both UVA and UVB [ultraviolet light

-14-

is] dangerous and that use of Defendant's machines greatly increases the risk of skin cancer." Id. ¶28.  Reading the Complaint in its entirety, Plaintiff's claims appear to be based on both omissions and affirmative misrepresentations.

This Court must determine whether Defendant's alleged omissions and affirmative misrepresentations with respect to the dangers of its products form the basis for consumer fraud or products liability claims.   As another Court in this District recently observed, the line between consumer fraud and failure to warn (i.e., a sub-type of products liability) claims is not always a clear one.  See New Hope Pipe Liners, LLC v. Composites One, LCC, 2009 U.S. Dist. LEXIS 111217 (D.N.J. Nov. 25, 2009).   There, the plaintiff's claims included "claims for common law fraud, negligent misrepresentation, violation of the Consumer Fraud Act, promissory estoppel, and breach of the implied warranty of fitness for a particular purpose." Id. at *9.  The Court found that Plaintiff's claims were all "representation-based," and accordingly, determined that they were consumer fraud claims in nature.  Id.   However, it reasoned, "if Plaintiff was claiming that Defendants violated some kind duty to disclose by failing to alert Plaintiff as to the possible consequences of using [the product], then [a] Court might have reason to construe this as a 'failure to warn' claim subsumed by the PLA." Id.  It explained, "if a seller or manufacturer fails to warn a buyer about a product's adverse effects, the buyer's lawsuit must be brought as a PLA defective warning case, not as a fraud case alleging a material omission. Id. (citing Brown ex rel. Estate of Brown v. Phillip Morris, 228 F. Supp. 2d 506, 516-17 (D.N.J. 2002).  In short, to assess whether a plaintiff's claims sound in consumer fraud or products liability, courts should consider the "essential nature" of the claims. Id.

To determine whether Plaintiff's claims are representation-based consumer fraud claims, or

are more properly characterized as "failure to warn" claims governed by the PLA, the Court will consider the new authorities upon which Defendant relies in support of its motion for a partial judgment on the pleadings (In re Lead Paint Litig., McDarby v. Merck, and Sinclair v. Merck).

In In re Lead Paint Litig., the plaintiff sought "to recover, from manufacturers and distributors of lead paints, the costs of detecting and removing lead paint from homes and buildings, of providing medical care to residents affected with lead poisoning, and of developing programs to educate residents about the dangers of lead paint." Id. at 487. As the New Jersey Supreme Court explained, "a careful reading would demonstrate that [the plaintiffs' claims] sound in products liability causes of action[, as t]he central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead—and by extension, with the dangers of including it in paint intended to be used in homes and businesses—and failed to warn of those dangers." Id. at 503. The Court found that "this classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA." Id. (citing N.J.S.A. 2A:58C-2).

In McDarby v. Merck & Co., Inc., the plaintiff asserted that defendant Merck misrepresented the safety of Vioxx. 401 N.J. Super. 10, 949 A.2d 223 (App.Div. 2008). Plaintiff was awarded damages pursuant to the CFA. Id. The Defendant appealed, arguing that Plaintiff's claims were not cognizable under the CFA, but rather, only pursuant to the PLA. The Appellate Division agreed, and found that "[t]he gravamen of plaintiffs' consumer fraud claim was that Merck marketed Vioxx fully aware of its cardiovascular risk but made misrepresentations, and intentionally suppressed, concealed, or omitted material information [and] failed to be truthful while marketing the drug." Id. at 276-77. The Court explained that

-16-

> [a]lthough asserting what, in essence, is a claim of failure to warn of dangers inherent in Vioxx cognizable under the PLA, N.J.S.A. 2A:58C-2 and -4, plaintiffs claim entitlement to an additional damage award for economic loss pursuant to N.J.S.A. 56:8-2 as the result of the employment by Merck of an 'unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of [a] material fact with intent that others rely upon such concealment, suppression or omission [i.e., a CFA claim].

Id.  That is, although the plaintiffs were, in essence, asserting a failure to warn claim, they attempted to bring their claims pursuant to the CFA.  Id.  The Court, however, did not permit plaintiffs to proceed on the CFA claims, and found persuasive the defendant's argument that "by enacting the PLA, the New Jersey Legislature manifested its intent to replace all pre-existing claims by 'one unified, statutorily defined theory of recovery for harm caused by a product.'"  Id. (citing In re Lead Paint Litig., 191 N.J. 405, 436, 924 A.2d 484 (2007)).

In McDarby, the plaintiff claimed that the defendant "failed to warn of dangers from a product of which it had knowledge, resulting in alleged economic harm to them."  Id. at 278.  The Court explained that "the economic 'harm' upon which their claims are based, consisting of a loss 'deriving from' personal physical illness, injury or death, pain and suffering, mental anguish or emotional harm, and loss of consortium is, as in Lead Paint, encompassed within the definition of harm set forth in the PLA."  Id. at 278; see N.J.S.A. 2A:58C-1b(2).  The Court determined that, "the essential effect of recognition of a cause of action for the fraudulent withholding of safety information such as that espoused by plaintiffs pursuant to the CFA—a cause of action that likely would be available to most product liability plaintiffs claiming a failure to warn," would be to permit CFA-variety relief despite the balance established by the legislature "between the interests of manufacturers, the public and individuals established by the Legislature in enacting the PLA."  Id.  As such, the plaintiff's CFA claims were subsumed by the PLA.

Immediately after the McDarby decision, the New Jersey Supreme Court issued its opinon in Sinclair v. Merck & Co., 195 N.J. 51, 948 A.2d 587 (N.J., June 4, 2008).   In Sinclair, the plaintiffs brought a products liability action seeking to recover the costs of medical monitoring without alleging a physical injury.  The Court, as in the two decisions discussed above, emphasized that "[t]he language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product." Id. at 595.  Although plaintiffs did not contend that they had suffered any physical harm from the defendant's pharmaceutical product, their claims still fell within the scope of the PLA, because "[t]he heart of plaintiffs' case is the **potential for harm** caused by Merck's drug." Id. at 597 (emphasis added).   Accordingly, the Court concluded that Plaintiffs' case "is obviously a product liability claim[ and as such,] Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope." Id.   The plaintiffs' CFA claim was, therefore, dismissed.

Finally, in a Superior Court decision construing the cases above, Bailey v. Wyeth, Inc., the plaintiffs asserted claims pursuant to the PLA and CFA, as well as claims for negligence, breach of implied warranty, breach of express warranty, fraud,  misrepresentation, and negligent misrepresentation.  2008 N.J. Super. LEXIS 3004 (Law Div. July 11, 2008).  The plaintiffs alleged "that defendants misled physicians and the public about the safety of Provera, Premarin and Prempro and that defendants' fraudulent misrepresentation led directly to plaintiffs' purchase of those drugs." Id. at *82-83.  The plaintiffs' purchase resulted in "purely economic loss . . . separate and distinct from the damages plaintiffs incurred as a result of . . . physical injuries, which plaintiffs allege were caused by her ingestion of these products." Id.  Relying on Lead Paint and Sinclair, the Court held

that "[t]o allow plaintiffs to seek damages for loss of their co-payments [i.e., economic damages] as a result of purchasing defendants' drugs under a theory of consumer fraud will 'create a cause of action entirely inconsistent with the PLA's comprehensive legislative scheme.'" Id. at 91 (internal citations omitted). In sum, because the "essential nature" of the plaintiffs' claims were that the defendants failed to warn of the dangers of their drug product, the Court found that the claims were products liability claims properly brought pursuant to the PLA.

The Court reads the decisions above to indicate that Plaintiff's consumer fraud claims must be subsumed, at least in part, by the PLA.

Plaintiff's claims based on the allegation that Defendant knew of dangers associated with its tanning beds, and failed to disclose them, must be considered "failure to warn" claims. Just as in Lead Paint, Plaintiff's complaint was "that defendants were aware of dangers associated with [their product] and failed to warn of th[e] dangers" that are associated with its use. 924 A.2d at 503; see also McDarby, 949 A.2d at 247 (plaintiffs claim for fraud based on the fact that Merck "marketed Vioxx fully aware of its cardiovascular risk but made misrepresentations, and intentionally suppressed, concealed, or omitted material information [and] failed to be truthful while marketing the drug" was subsumed by the PLA); Bailey, 2008 N.J. Super. LEXIS 3004, at *82-83 (plaintiffs' claims "that defendants misled physicians and the public about the safety of [their product] and that defendants' fraudulent misrepresentation led directly to plaintiffs' purchase of those drugs" gave rise to a PLA "failure to warn" claim). Here, as Plaintiff's Complaint makes clear, this case is in large part based upon Defendant's alleged "failure to warn" of dangers known about its product.

Second, the fact that Plaintiff seeks damages solely for the non-physical (i.e., economic) harm resulting from her use of Defendant's product does not compel a different result. See Sinclair, 948

-19-

A.2d 587, 594-96 (finding that plaintiffs' claims were subsumed by the PLA, notwithstanding the fact that plaintiffs could not demonstrate an actionable "harm" under the PLA).[5]  As such, the fact that Plaintiff excludes claims to recover for any physical harm she has suffered does not remove her failure to warn claim from the scope of the PLA.

Here, as in <u>Sinclair</u>, Plaintiff's claim that Defendant's product was defective as lacking adequate warnings is premised on her assertion that tanning could ultimately cause her physical harm:  Plaintiff claims that Defendant failed "to provide adequate warnings, notices or any relevant, material information concerning their ultraviolet (UV) services, and specifically—and most dangerously—fails to warn customers about the risks of cancer, including basal cell carcinoma and squamous cell carcinoma."  It is this "potential" for future physical harm that is the basis for Plaintiff's economic damages (that is, her purchase would not have been economically harmful to her absent the potential for future physical harm).  Accordingly, this Court finds that Plaintiff's CFA claims, insofar as they are premised upon a failure to warn, are subsumed by the PLA.

The Court observes, however, that Plaintiff's claims that are not premised upon a "failure to warn" theory (e.g., her claims premised upon misleading advertisements and/or representations made by employees at Defendant's franchises) may potentially proceed under the CFA

---

[5] The Third Circuit, sitting in diversity in <u>Knoster v. Ford Motor Co.</u>, 2006 U.S. App. LEXIS 22869, at *27 (3d Cir. Sept. 6, 2006), was required to predict whether the PLA excluded from its scope claims seeking redress for certain types of "harm" such as economic damages.  It determined that because damages to the purchased product itself were not covered by the PLA, that the PLA could not subsume such claims.  <u>Id.</u> at *27.  Accordingly, it predicted that the Supreme Court of New Jersey would not permit the PLA to subsume the plaintiff's consumer fraud claims seeking such damages.  <u>Id.</u>     In <u>Knoster</u>, however, unlike in this case, the damages plaintiffs sought **were explicitly excluded** from the scope of the PLA (i.e., harm to the property itself).  <u>See Estate of Knoster v. Ford Motor Co.</u>, 2008 U.S. Dist. LEXIS 103342, at 25-26 n.4 (D.N.J. Dec. 17, 2008).  Accordingly, the Court's finding that the PLA did not subsume the plaintiff's CFA claims does not compel a similar result here.

## IV.  <u>CONCLUSION</u>

For the reasons stated, this Court will grant Defendant's motion for partial judgment on the pleadings.  To the extent that Plaintiff's claims are based on Defendant's failure to warn of dangers associated with its tanning beds, they are subsumed by the PLA.

In light of the Court's decision as to Defendant's motion for partial judgment on the pleadings, the Court cannot render a decision on Plaintiff's pending motion to certify a class in this matter.  Plaintiff's consumer fraud claims, upon which Plaintiff relies in seeking class certification, are largely premised on Defendant's uniform labeling of its tanning beds.  As explained above, however, certain of Plaintiff's claims (i.e., those based on labeling/warnings) can no longer proceed under the CFA.  Therefore, Plaintiff's current motion for class certification, as is, cannot be considered.  Plaintiff, if she still seeks certification of a class in this matter, may modify her motion for class certification in accordance with this Opinion.


 S/ Dennis M. Cavanaugh_____
Dennis M. Cavanaugh, U.S.D.J.

Date:         June __30__, 2010
Orig.:        Clerk
cc:           All Counsel of Record
              Hon. Joseph A. Dickson, U.S.M.J.
              File


-21-